UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
----------------------------------X
HOLLY HUGHES, HAL HUGHES and        :
DION HUGHES, on behalf of           :
themselves and all others           :
similarly situated,                 :
                                    :
                                    :
                Plaintiffs,         :    02 Civ. 6384 (MBM)
                                    :    OPINION AND ORDER
       -against-                    :
                                    :
LASALLE BANK, N.A., ABN-AMRO        :
BANK N.V., ABN-AMRO HOLDING N.V.,   :
ABN-AMRO ASSET MANAGEMENT (USA),    :
INC., and LASALLE STREET CAPITAL    :
MANAGEMENT, LTD.,                   :
                                    :
                Defendants.         :
----------------------------------X

APPEARANCES:

RICHARD D. GREENFIELD, ESQ.
(Attorney for plaintiffs)
Greenfield & Goodman LLC
7426 Tour Drive
Easton, MD 21601
(410) 745-4149

DANIEL COBRINIK, ESQ.
(Attorney for plaintiffs)
2 Grand Central Tower
140 East 45th Street
25th Floor
New York, NY 10017
(212) 725-6888

KENNETH A. LAPATINE, Esq.
MARK H. BUDOFF, Esq.
(Attorneys for defendants)
Greenberg Traurig, LLP
200 Park Avenue
15th Floor
New York NY 10116
(212) 801-9200

MICHAEL B. MUKASEY, U.S.D.J.

Plaintiffs Dion, Hal, and Holly Hughes, on behalf of
themselves and all others similarly situated, sue LaSalle Bank,
N.A. ("LaSalle"), ABN-AMRO Bank, N.V., ABN-AMRO Holding, N.V.,
ABN-AMRO Asset Management, Inc., and LaSalle Street Capital
Management, Ltd. ("LSCM"), alleging that LaSalle breached its
fiduciary duty to the beneficiaries of certain accounts under its
care, ABN-AMRO Asset Management tortiously interfered with that
fiduciary duty, and all the defendants unjustly enriched
themselves at plaintiffs' expense. Plaintiffs move for class
certification under Fed. R. Civ. P. 23 and partial summary
judgment under Fed. R. Civ. P. 56(c). Defendants cross-move to
dismiss the complaint under Fed. R. Civ. P. 12(b)(6) for failure
to state a claim upon which relief may be granted. For the
reasons set forth below, defendants' motion to dismiss the
complaint is granted. Plaintiffs' motions are denied as moot.

## I.

Dion, Hal, and Holly Hughes are the beneficiaries of a
trust established in 1988 by their grandfather John E. Hughes
(the "Hughes Trust"). (Compl. ¶ 16)  LaSalle, a federally
chartered bank that is a wholly owned subsidiary of Dutch bank
ABN-AMRO, is the trustee of the Hughes trust. (Compl. ¶¶ 13, 17)
ABN-AMRO Asset Management and its precursor LSCM are subsidiaries

of LaSalle. (Compl. ¶ 14)

Before 1993, LaSalle invested its trust assets in individually managed portfolios and/or common trust funds. (Compl. ¶ 23) Common trust funds were in-house investment groups, similar to mutual funds, which were managed and directed by LaSalle or LSCM. (Compl. ¶ 24) LaSalle and its affiliates received no investment advisory fees from the trust accounts; LaSalle did receive fees for serving as trustee. (Compl. ¶ 25) Until 1992, LaSalle allegedly discouraged its customers from investing in mutual funds, partly because of what LaSalle suggested was a duplication of fees. (Compl. ¶ 28)

In 1992, LaSalle's parent company, ABN-AMRO, decided to establish its own family of mutual funds called the Rembrandt Funds; LSCM was the investment advisor for the Rembrandt Funds and SEI Corporation was the distributor and administrator for the Rembrandt Funds. (Compl. ¶¶ 29, 30) The Rembrandt Funds had trouble finding investors, because they had no investment track record, LSCM had never previously managed a mutual fund, and the investment advisor fees were higher than those of most mutual funds. (Compl. ¶¶ 32-35) Additionally, LaSalle needed at least 1,000 participants in each Rembrandt Fund to list the fund on NASDAQ and have its market price published in newspapers. (Compl. ¶ 43)

In December 1992, LaSalle sent plaintiffs a form

letter, a question-and-answer sheet, a prospectus describing the Rembrandt Funds, and a form to authorize conversion of the trust assets from individual managed accounts and/or common trust funds to the Rembrandt Funds (the "Investment Conversion"). (Compl. ¶ 76) These documents did not disclose explicitly that the Investment Conversion would increase value for the shareholders of ABN-AMRO. (Compl. ¶ 77) The question-and-answer sheet stated that LaSalle was switching to the Rembrandt Funds because many customers had requested mutual fund investments; it was a boilerplate form produced by SEI of the sort used by many different banks. (Compl. ¶¶ 78, 80)

On January 4, 1993, LaSalle completed the Investment Conversion. (Compl. ¶¶ 2, 36) The Investment Conversion did not materially change the underlying stocks and bonds held by the fiduciary accounts or the management of those accounts; only the investment vehicle in which those securities were held was changed. (Compl. ¶ 49) LSCM managed the common trust funds prior to January 4, 1993, and it managed the Rembrandt Fund after January 4, 1993. (Compl. ¶ 50) The Investment Conversion benefited the defendants because the administrative expenses incurred by LaSalle could be passed on to the trusts as expenses of the Rembrandt Funds. (Compl. ¶ 37) The Rembrandt Funds paid investment advisory fees to the defendants. (Compl. ¶ 4) Additionally, the Investment Conversion allegedly subjected the

fiduciary accounts to premature and increased capital gains
taxes. (Compl. ¶ 7)  After the Investment Conversion, LaSalle
reduced its fiduciary fees by .3 percent and charged the
Rembrandt Funds investment advisory fees for LSCM, administrative
fees for SEI, and other operating expenses that averaged between
one and two percent. (Compl. ¶ 39)

    The Rembrandt Funds underperformed when compared to
similar funds and other benchmarks. (Compl. ¶ 92) During the five
years before the commencement of this action, the Rembrandt Asian
Tigers Com Fund performed worse than 94 percent of comparable
funds, the Rembrandt Value Com Fund performed worse then 73
percent of comparable funds, the Rembrandt Small Cap Com Fund
performed worse then 67 percent of comparable funds, and the
Rembrandt Growth Tr Fund performed worse then 57 percent of
comparable funds.  (Compl. ¶¶ 94-95, 100-101, 103-104, 106-107)
During the three years before the commencement of this action,
the Rembrandt Latin American Equity Com Fund performed worse than
87 percent of comparable funds. (Compl. ¶¶ 97, 98)  However, the
Rembrandt Funds generated millions of dollars in income for
defendants and their affiliates. (Compl. ¶ 93)  LaSalle never
moved the fiduciary account assets into more productive
investments. (Compl. ¶ 109)

    LaSalle allegedly never analyzed whether the trust
beneficiaries would have earned more from the common trust funds

or the Rembrandt Funds. (Compl. ¶ 51) It also never considered
any mutual fund except the Rembrandt Funds for the trust accounts
or any investment advisor for the Rembrandt Funds other than
LSCM. (Compl. ¶¶ 52, 53) The decision to undertake the Investment
Conversion was made by LaSalle's senior management on a class-
wide basis for all trusts that had assets invested in common
trust funds. (Compl. ¶ 55) Senior managers allegedly did not read
any documents regarding the Investment Conversion before
approving it. (Compl. ¶ 63)

The written agreement governing plaintiffs' trust
provides that the trust "shall be construed and regulated in all
respects in accordance with the laws of the State of New York."
(Compl. ¶¶ 18-19)  Before suing here, plaintiffs sued as
individuals in New York state court, Hughes v. LaSalle Bank,
N.A., No. 105423/01; that action has been stayed by agreement of
the parties pending determination of this action. (Compl. ¶ 8)
Plaintiffs are seeking money damages and injunctive relief
permitting them to remove LaSalle as the trustee of the Hughes
Trust.


II.

Diversity jurisdiction exists pursuant to 28 U.S.C. §
1332 (2000).  Plaintiff Holly Hughes is a New York resident.
(Compl. ¶ 10) Plaintiff Hal Hughes is an American citizen with a

current residence in Milan, Italy and a former residence in
Texas. (Compl. ¶ 11) Plaintiff Dion Hughes is a Texas resident.
(Compl. ¶ 12) Defendant LaSalle is a federally chartered bank
that is a wholly owned subsidiary of a Dutch Bank, ABN-AMRO, with
a principal place of business in Illinois. (Compl. ¶ 13)
Defendants ABN-AMRO Asset Management and LSCM are Illinois
corporations with their principal places of business in Chicago.
(Compl. ¶ 14) Plaintiffs seek damages in excess of $75,000.
(Compl. ¶ 15)


III.

          Plaintiffs allege that LaSalle should be held liable
for breaching its fiduciary duties to the beneficiaries of the
trust accounts, ABN-AMRO Asset Management and its predecessor
LSCM for tortiously interfering with that fiduciary duty, and
that all defendants are liable for unjustly enriching themselves.
Plaintiffs move for class certification and partial summary
judgment.  Defendants move to dismiss the plaintiffs' amended
complaint for failure to state a claim on the ground that it is
barred by the statute of limitations or, in the alternative, that
it is barred by the plaintiffs' consent to and subsequent
ratification of the Investment Conversion.  The court must first
analyze defendants' motion to dismiss. Schweizer v. Trans Union
Corp., 136 F.3d 233, 239 (2d Cir. 1998) (holding the merits of a

6

plaintiff's claim on a motion to dismiss can be resolved before
class certification is considered).

A.    Defendants' Motion to Dismiss Based on the Statue of
      Limitations

        Defendants argue that the statute of limitations has
run on plaintiffs' claims because the Investment Conversion took
place in January and February 1993, more than nine years before
they asserted their current claims.  Dismissal for failure to
state a claim based on a statute of limitations is appropriate
only if a complaint shows clearly that a claim is not timely.  See
Harris v. City of New York, 186 F.3d 243, 251 (2d Cir. 1999).

        New York procedural law is applied to determine the
applicable statute of limitations, because, "where jurisdiction
rests upon diversity of citizenship, a federal court in New York
must apply the New York choice-of-law rules and statutes of
limitations." Stuart v. Am. Cyanamid Co., 158 F.3d 622, 626 (2d
Cir. 1998).  Generally, New York courts apply New York's statute
of limitations, even when the injury giving rise to the claims
occurred outside New York, subject to N.Y. C.P.L.R. § 202. Id. at
627.  Under N.Y. C.P.L.R. § 202, the claims of a plaintiff who is
not a New York domiciliary are time-barred if they are untimely
under the shorter of either New York's limitation period or the
limitation period of the jurisdiction where the cause of action
accrued. N.Y. C.P.L.R. § 202 (McKinney 2001).  Any claims made in
a New York court by a plaintiff who is a New York domiciliary

will be governed by the New York statute of limitations.

    To determine which state statute of limitations applies to a case based on diversity jurisdiction under New York's choice of law rules, the court must determine where the cause of action accrued. Under N.Y. C.P.L.R. §202, "when an alleged injury is purely economic, the place of injury is usually where the plaintiff resides and sustains the economic impact of the loss." Global Fin. Corp. v. Triac Corp., 93 N.Y.2d 525, 529, 693 N.Y.S.2d 479 (1999). Barring "unusual circumstances," the economic impact is felt in the state of the plaintiff's residence. See Block v. First Blood Assoc., 988 F.2d 344, 349 (2d Cir. 1993); Kidder, Peabody & Co. v. McArtor, 223 A.D.2d 502, 637 N.Y.S.2d 99 (1st Dep't 1996) (holding that a cause of action for breach of fiduciary duties brought by Tennessee investors accrued in Tennessee even though the accounts were maintained in New York). Dion and Hal Hughes were residents of Texas in 1993, when the alleged injury occurred, thus their claims will be subject to the shorter of the limitations periods of Texas and New York. Holly Hughes is a New York resident, and her claims are governed by the New York statute of limitations.

1.    Holly Hughes

    The N.Y. C.P.L.R. does not specify a limitations period for breach of fiduciary duty, unjust enrichment, or tortious interference with fiduciary relationship claims, but the New York

courts have held that such claims are governed by either a three-year statute of limitations when monetary relief is sought or a six-year statute of limitations when equitable relief is sought. See Carlingford Center Point Assoc. v. MR Realty Assoc., 4 A.D.3d 179, 179-80, 772 N.Y.S.2d 273 (1st Dep't 2004) (three-year statute of limitations applied to a breach of fiduciary duty claim seeking monetary damages); Kaszirer v. Kaszirer, 286 A.D.2d 598, 730 N.Y.S.2d 87 (1st Dep't 2001); Loengard v. Santa Fe Indus., Inc., 70 N.Y.2d 262, 519 N.Y.S.2d 801, 803 (1987) (six-year statute of limitations applied to claim for unjust enrichment as result of a breach of fiduciary duty); Meridien Int'l Bank Ltd. v. Gov't of the Republic of Liberia, 23 F. Supp. 2d 439, 452 (S.D.N.Y. 1998) (three-year statute of limitations applied to claim for tortious interference with a fiduciary duty). If plaintiffs seek both monetary and equitable relief, each claim will be considered separately for limitations purposes. Merine v. Prudential-Bache Utility Fund, Inc., 859 F. Supp. 715, 725 (S.D.N.Y. 1994); see also Kearney v. Atlantic Cement Co., 33 A.D.2d 848, 849, 306 N.Y.S.2d 45 (3rd Dep't 1969) (holding plaintiff's request to enjoin a nuisance was not time-barred although his request for damages arising out of that nuisance was time barred under the three-year statute of limitations).

A cause of action for breach of fiduciary duty accrues

upon the occurrence of the alleged wrongful conduct. <u>See</u>
<u>Steinhardt</u> v. <u>Johns-Manville Corp.</u>, 446 N.Y.S.2d 244, 246, 54
N.Y.2d 1008 (1981).  Thus, the cause of action in this case
accrued on the date of the Investment Conversion, which occurred
nine years before this action was filed  Generally, Holly Hughes'
claims would be barred by the statute of limitations regardless
of whether she sought monetary or equitable relief.  However, the
six-year limitations period that applies to a breach of fiduciary
duty claim for equitable relief, such as an unjust enrichment
claim, is tolled until the fiduciary openly repudiates his
obligation or the fiduciary relationship is otherwise terminated.
<u>See</u> <u>In re Barabash's Estate</u>, 31 N.Y.2d 76, 334 N.Y.S.2d 210
(1972) (proof of repudiation required to start running of statue
of limitations when plaintiff seeks to compel an accounting);
<u>Golden Pacific Bancorp</u> v. <u>F.D.I.C.</u>, 273 F.3d 509, 518 (2d Cir.
2001) (statute of limitations for unjust enrichment and fiduciary
duty claims to recover interest earned by a receiver did not
begin to run until the date the receivership was terminated);
<u>Transport Workers Union of America Local 100 AFL-CIO</u> v. <u>Schwartz</u>,
17 A.D.3d 218, 794 N.Y.S.2d 308 (1st Dep't 2005) (causes of
action alleging a breach of fiduciary duty seeking the
disgorgement of commissions will have their limitations period
tolled if the parties have a continuous fiduciary relationship);
<u>Kaszirer</u>, 286 A.D.2d at 599 (limitations period was three years

because plaintiff was seeking monetary relief and rejected contention that limitations period was tolled because defendant had not repudiated the relationship).  "The reason for such a tolling rule is that the beneficiary should be entitled to rely upon a fiduciary's skill without the necessity of interrupting a continuous relationship of trust and confidence by instituting suit." Golden Pacific Bancorp., 273 F.3d at 519; see also Greene v. Greene, 56 N.Y.2d 86, 92, 94-95, 451 N.Y.S.2d 46 (1982). Thus, as LaSalle still serves as trustee for the Hughes trust, Holly Hughes' claims will be timely if they seek equitable relief.

Holly Hughes' claims for breach of fiduciary duty and tortious interference, for which she seeks compensatory damages, are barred by New York's three-year statute of limitations. Contrary to Hughes' arguments, the continuation until today of LaSalle's alleged wrongdoing through its investment in the Rembrandt Funds does not toll the limitations period. See Lowell Wiper Supply Co. v. The Helen Shop, Inc., 235 F. Supp. 640, 644 (S.D.N.Y. 1964) ("The courts of New York have consistently rejected the theory . . . that each payment pursuant to a wrongful agreement gives rise to a separate and distinct claim, whether the theory was invoked to establish capacity of a shareholder to sue or to overcome the bar of a statute of limitations."); Salzmann v. Prudential Sec. Inc., No. 91 Civ.

4253, 1994 WL 191855, at * 7 (S.D.N.Y. May 16, 1994) (holding cause of action for a breach of fiduciary duty regarding the management of a portfolio of investments accrued on the date of the last stock purchase made by the investment bank, as that was the alleged wrongful act).

Holly Hughes' reliance on Merine v. Prudential-Bache Utility Fund, Inc., 859 F. Supp. 715, 725 (S.D.N.Y. 1994), for the proposition that a new cause of action arose every time the defendant mutual fund charged an allegedly excessive fee, is misplaced. In Merine, the three-year statute of limitations was tolled for the claims based on a recurring, annual violation of the securities law due to the charging of excessive fees, because each such violation created a new and separate breach of the fiduciary duty. Id. The three-year statute of limitations was not tolled for the fiduciary duty claims based on allegedly misleading solicitation of the investors' approval of the fee schedule. Id. Here, as in Merine, where claims were found time-barred, the plaintiff asserts a single breach of fiduciary duty claim based on the Investment Conversion as opposed to a series of separate breaches based upon continuing violations of securities laws. Further, courts in this district have rejected the theory that "each payment pursuant to a wrongful agreement gives rise to a separate and distinct claim, [when] the theory was invoked . . . to overcome the bar of a statute of

limitations. The continued payments merely reflect the damages sustained by the party wronged." Korn v. Merrill, 403 F. Supp. 377, 388 (S.D.N.Y. 1975) (quoting Lowell, 235 F. Supp. at 644). Thus, the three-year statute of limitations that applies to the breach of fiduciary duty and tortious interference claims has not been tolled, and those claims are barred.

However, the six-year limitations period applies to Holly Hughes' unjust enrichment claim and her request that LaSalle be enjoined from opposing its removal as trustee of the Hughes Trust. The three-year statute of limitations does apply to requested accountings when plaintiffs primarily seek monetary damages in a breach of fiduciary duty claim and pursue an accounting merely to determine the amount of damages. Carlingford, 4 A.D.3d 179 at 180; see Lex Tenants Corp. v. Gramercy North Assocs., 284 A.D.2d 278, 726 N.Y.S.2d 852 (1st Dep't 2001) ("The so-called accountings were sought not for purposes of equity but merely to determine the amount of money damages necessary to fully compensate plaintiff . . . ."). However, the six year statute of limitations will apply to a claim seeking restitution to recover the benefit the defendant is alleged to have received unjustly. Great-West Life & Annuity Ins. Co. v. Knudson, 534 U.S. 204, 214 (2002) ("For restitution to lie in equity, the action generally must seek not to impose personal liability on the defendant, but to restore to the plaintiff

particular funds or property in defendant's possession."); <u>Tull</u> v. <u>United States</u>, 481 U.S. 412, 424 (1987) (describing disgorgement of improper profits as being "traditionally considered an equitable remedy"); <u>Loengard</u>, 70 N.Y.S.2d at 803;

Holly Hughes alleges that the defendants unjustly enriched themselves through the Rembrandt Funds at the expense of the trust beneficiaries by reinvesting the beneficiaries' assets in the Rembrandt Funds so that additional advisory fees could be charged. (<u>See</u> <u>e.g.</u> Compl. ¶¶ 138, 139, prayer for relief). Such a claim is one for equitable relief, because it seeks the disgorgement of improperly charged fees and their return to the plaintiffs. As this is an equitable claim for relief and LaSalle has not repudiated or otherwise terminated its fiduciary relationship with Holly Hughes, the six year statute of limitations applies and remains tolled to this day.

Thus, the unjust enrichment claim is timely. The claim that seeks to enjoin LaSalle from opposing its removal as trustee is also timely in that such claim seeks equitable relief and the fiduciary relationship has not been terminated. However, Holly Hughes' breach of fiduciary duty and tortious interference claims are barred by the statute of limitations because they seek compensatory damages and do not fall under the continuing wrong doctrine.

2. Hal and Dion Hughes

The economic injury suffered by Hal and Dion Hughes
occurred in Texas; therefore, their claims are subject to the
shorter statute of limitations as between New York and Texas. <u>See</u>
N.Y. C.P.L.R. §202.

Under Texas law, the statute of limitations for a
breach of fiduciary duty claim is four years. TX Civ. Prac. &
Rem. § 16.004 (Vernon 2002).  This is longer than New York's
three year statute of limitations with respect to fiduciary duty
claims seeking monetary relief, so the New York statute of
limitations will apply to the breach of fiduciary duty and
tortious interference claims.  As discussed above, that
limitations period has expired and those claims are dismissed.

The four-year Texas statute of limitations is shorter
then the six-year New York limitations period for breach of
fiduciary duty claims that seek equitable relief.  Therefore,
this court must apply the Texas statute of limitations to Dion
and Hal Hughes' claims for equitable relief.  When the Texas
statute of limitations is borrowed, so too are its tolling
doctrines. <u>See</u> <u>In re Smith Barney, Harris Upham & Co.</u> v. <u>Luckie</u>,
85 N.Y.2d 193, 207, 623 N.Y.S.2d 800 (1995) ("In borrowing the
foreign statute, all extensions and tolls applied in the foreign
state must be imported with the foreign statutory period, so that
the entire foreign statute of limitations . . . applies, and not

merely its period.") (internal quotation omitted); <u>Childs</u> v.
<u>Brandson</u>, 60 N.Y.2d 927, 929, 471 N.Y.S.2d 40 (1983). Unlike New
York's, the Texas limitations period can begin to run even before
the trustee repudiates the trust or the trust relationship is
otherwise ended. However, it is tolled until the time when the
plaintiffs either did discover or, with reasonable diligence,
could have discovered the transaction constituting the breach of
fiduciary duty. <u>Little</u> v. <u>Smith</u>, 943 S.W.2d 414, 420 (Tex. 1997);
<u>Malone</u> v. <u>Sewell</u>, 168 S.W.3d 243 (Tex. App. 2005); <u>Interfirst</u>
<u>Bank-Houston</u> v. <u>Quintana Petroleum Corp.</u>, 699 S.W.2d 864, 875
(Tex. App. 1985) (holding that trustees who are aware of the
transaction undertaken with respect to inquire into the
transaction); <u>cf.</u> <u>Shah</u> v. <u>Meeker</u>, 435 F. 3d 244, 249 (2d Cir.
2006) (holding limitations period on securities fraud begins to
run when plaintiff is put on inquiry notice that fraud is
probable and does nothing to investigate such probable fraud).

Dion and Hal Hughes were provided with information
during the Investment Conversion that triggered a duty to inquire
into the transaction. They knew that LSCM, which was an
affiliate of LaSalle, was going to manage the Rembrandt Funds;
that their trust assets were being invested, in full, in the
Rembrandt Funds; and of the fees to be charged by LSCM, in
December 1992 when they received a prospectus from LaSalle.
(Compl. ¶¶ 4, 29, 30, 76, Pl. Ex. 10 at p. 4) The Investment

16

Conversion did not materially change the underlying stocks and bonds held by the trust accounts, so Dion and Hal Hughes were able to assess the profitability of these investments before the Investment Conversion occurred. (Compl. ¶ 49) Further, as alleged in the complaint, data was available to determine that, at least five years before this action was commenced, the Rembrandt Funds were performing poorly compared to other mutual funds. (Compl. ¶ 92) Thus, the four year statute of limitations ran a year before the complaint was filed, because Dion and Hal Hughes, with reasonable diligence, could have discovered the facts that underlie their claims if they were not already aware of them more than four years ago.

Additionally, the Texas statute of limitations can be tolled if the defendant concealed from the plaintiff facts that were necessary for the plaintiff to know that he had a cause of action. <u>Malone</u>, 168 S.W.3d at 243. Dion and Hal Hughes allege the defendants were not forthcoming about their potential to benefit from the Rembrandt Funds and their motivations for moving the trust assets into the Rembrandt Funds. However, the defendants did not conceal that LSCM advised the Rembrandt Funds, that LSCM was a subsidiary of LaSalle's parent company ABN-AMRO, that LSCM would be receiving fees as the advisor of the Rembrandt Funds, or that the Rembrandt Funds were underperforming compared to similar investment vehicles. Those facts provide the basis

17

for Dion and Hal Hughes' claims and were enough to put the plaintiffs on notice that they had a potential cause of action. The four-year Texas limitations period has expired with respect to the equitable claims made by Dion and Hal Hughes, and those claims, for both monetary and equitable relief, are barred under N.Y. C.P.L.R. § 202.

B.    Defendant's Motion To Dismiss Based on Ratification and Consent

Plaintiffs' remaining claim -- made by Holly Hughes for unjust enrichment -- is challenged on the ground that Holly Hughes consented to and ratified the Investment Conversion. The difference between the standards for ratification and consent in New York, where Holly Hughes is domiciled, and Illinois, where the defendants are domiciled, necessitates a choice of law analysis. See Finance One Public Co. Ltd. v. Lehman Bros. Special Fin., Inc., 313 F.3d 325, 331 (2d Cir. 2005).

In diversity cases, federal courts look to the laws of the forum state, here New York, to resolve a choice of law issue. See Id. Although the trust agreement between Holly Hughes and the defendants specifies that "The trustee, by joining in the execution of this Agreement, hereby signifies its acceptance of this trust, which shall be construed and regulated in all respects in accordance with the State of New York," that provision does not apply to the present claim. (Compl. ¶ 18)

Under New York law, a provision stating that a contract

18

is to be governed by a certain body of law does not determine which body of law will govern a non-contractual cause of action. Krock v. Lipsay, 97 F.3d 640, 645 (2d Cir. 1996); Klock v. Lehman Bros. Kuhn Loeb, Inc., 584 F. Supp. 210, 215 (S.D.N.Y. 1984); Plymack v. Copley Pharm., Inc., 1995 WL 606272 at *5 (S.D.N.Y. Oct. 12, 1995) (holding that a "contractual choice of law provision . . . does not bind the parties with respect to non-contractual causes of action"). Whether a choice-of-law provision is of broad enough scope to cover a non-contractual claim is determined "under the relevant forum's choice-of-law rules governing the effectiveness of such clauses." Finance One, 414 F.3d at 332. The relevant forum is the forum where the action is brought, here New York, and under New York law the scope of the contractual choice-of-law provision is determined under New York law as opposed to the law selected by the provision. Id. at 332-333; Krock, 97 F.3d at 645.

Generally, "tort claims are outside the scope of contractual choice-of-law provisions that specify what law governs construction of the terms of the contract, even when the contract also includes a broader forum-selection clause." Finance One, 414 F.3d at 335. However, a choice-of-law provision can apply to tort claims incident to the contract if the express language of the provision is "sufficiently broad" as to "encompass the entire relationship between the contracting

19

parties." <u>Krock</u>, 97 F.3d at 645 (citing <u>Turtur</u> v. <u>Rothschild</u> <u>Registry Int'l, Inc.</u>, 26 F.3d 304, 309-10 (2d Cir. 1994)). There are no reported New York state cases where a contractual choice-of-law clause is drafted so broadly as to reach tort claims. <u>See</u> <u>e.g.</u>, <u>Finance One</u>, 414 F.3d at 335 (provision stating "This Agreement will be governed by and construed in accordance with the laws of the State of New York" did not reach a non-contractual claim); <u>Krock</u> 97 F.3d at 645 (provision stating "[t]his mortgage shall be governed by and construed in accordance with the laws . . . Massachusetts" not broad enough to cover a tort claim).

Although the Hughes trust agreement differs from aforementioned cases because it states that "The trustee, by joining in the execution of this Agreement, hereby signifies its acceptance of this trust, which shall be construed and regulated in all respects in accordance with the State of New York," the result is the same. The Hughes trust agreement choice-of-law provision, while questionable grammatically, appears to mean only that the agreement is to be construed in accordance with New York law and the trust is to be regulated in accordance with New York law. As Judge Robert E. Gerber of the Bankruptcy Court for this District, explained in his reading of a nearly identical choice of law provision, "The Agreement did not provide, however, that any and all disputes, <u>with respect to the parties' dealings</u> (or

any analogous broader formulation of the scope of the parties'
choice-of-law agreement) would be governed by [the law stated in
the choice-of-law agreement]." <u>In re Lois/USA New York, Inc.</u>
v. <u>Conseco Fin. Servicing Corp.</u>, 264 B.R. 69, 79 (S.D.N.Y.
Bankrp. 2001).  I agree with his analysis.  Thus, the choice-of-
law provision in the Hughes trust agreement, as it does not
provide that it extends to cover the entire relationship between
the parties or to their dealings, does not determine which
state's law will be applied to Holly Hughes' non-contractual
claims.

          To determine which law will govern a tort claim not
covered by a choice-of-law provision, New York uses an interest
analysis, which gives "controlling effect to the law of the
jurisdiction which, because of its relationship or contact with
the occurrence or the parties, has the greatest concern with the
specific issue raised in the litigation." <u>Cooney</u> v. <u>Osgood Mach.,</u>
<u>Inc.</u>, 81 N.Y.2d 66, 595 N.Y.S.2d 919, 922 (1993) (internal
quotation marks omitted); <u>Babcock</u> v. <u>Jackson</u>, 12 N.Y.2d 473, 240
N.Y.S.2d 743 (1963).  To determine which jurisdiction has the
greatest interest in the litigation, the court must weigh "(1). .
. the significant contacts and in which jurisdiction are they
located; and, (2) whether the purpose of the law is to regulate
conduct or allocate loss." <u>Padula</u> v. <u>Lilarn Properties Corp.</u>, 84
N.Y.2d 519, 620 N.Y.S.2d 310, 311 (1994).  Under this analysis,

the significant contacts are usually the parties' domiciles and the location where the tort was committed. AroChem Int'l, Inc., v. Buirkle, 968 F.2d 266, 270 (2d Cir. 1992); Schultz v. Boy Scouts of Am., Inc., 65 N.Y.2d 189, 491 N.Y.S.2d 90, 95-96 (1985). When the parties are domiciled in different states, as they are here, the situs of the tort controls in cases involving conduct regulation, such as claims for breach of fiduciary duty and unjust enrichment. Krock, 97 F.3d at 646.

        The contacts between Illinois and the underlying trust are strong, while the only contact between New York and this litigation is that a New York resident is one of the three beneficiaries of the Hughes Trust. The situs of the tort controls in cases such as this and the alleged tort was committed in Illinois. The trust res is located in Illinois, the Investment Conversion was discussed and completed by LaSalle at its place of business in Illinois, and the Rembrandt Funds are advised and run by LSCM, which has its place of business in Illinois. Further, Holly Hughes does not contend that New York has a strong public policy interest in this litigation, while Illinois does have such an interest because "[t]he administration of a trust of interests in movables is usually supervised . . . by the courts of the state in which the trust is to be administered." Restatement (Second) of Conflicts § 267 (1971). Illinois law will be applied to determine whether Holly Hughes

consented to or ratified the Investment Conversion.

Under Illinois law, a beneficiary can "consent to an act or omission by his trustee, even one that is a breach of trust." <u>Lambos</u> v. <u>Lambos</u>, 9 Ill. App. 3d 530, 535 (Ill. App. Ct. 1973). A beneficiary who gives such consent "cannot hold the trustee liable if he is competent, has full knowledge of the relevant facts, knows his legal rights and his consent is not induced by any other improper conduct of the trustee." <u>Id.</u>; <u>McCormick</u> v. <u>McCormick</u>, 180 Ill. App. 3d 184, 201 (Ill. App. Ct. 1988)("As a general rule, a beneficiary of a trust who consents to or approves of an act, omission or transaction by a trustee, may, upon the ground of waiver or estoppel, be precluded from subsequently objecting to the impropriety of such act, omission or transaction. The rule may arise from acquiescence, request, participation or notification.")(citing <u>Chicago Title and Trust Co.</u> v. <u>Shellaberger</u>, 399 Ill. 320, 77 N.E.2d 675 (1948)). Specifically, no breach of fiduciary duty, including one where recovery under the theory of unjust enrichment is sought, can be alleged if the plaintiff consented to the action take by the fiduciary. <u>See</u> <u>In re Estate of Kirk</u>, 242 Ill. App. 3d 68, 76 (Ill. App. Ct. 1993); <u>McCormick</u> v. <u>McCormick</u>, 180 Ill. App. 3d 184, 200 (Ill. App. Ct. 1989).

Similarly, a trust beneficiary who ratifies the acts of her trustee through her later conduct cannot hold that trustee

liable.  Ratification can be express or it can be "inferred from circumstances which the law considers equivalent to an express ratification." Karetzkis v. Cosmopolitan Nat'l Bank, 37 Ill. App. 2d 484, 490 (Ill. App. Ct. 1962); Old Security Life Ins. Co. v. Continental Illinois Nat'l Bank & Trust Co., 740 F.2d 1384, 1392 (7th Cir. 1984).  Ratification will be inferred when the trust beneficiary, with knowledge of the material facts, either fails to disaffirm the conduct in question or seeks or retains the benefits of the transaction she later challenges. Id.; Grot v. First Bank of Schaumburg, 292 Ill. App. 3d 88, 93 (Ill. App. Ct. 1997); Mateyka v. Schroeder, 152 Ill. App. 3d 854, 866 (Ill. App. Ct. 1987) ("Acquiescence or a failure to repudiate on the part of the person for whose benefit the act was performed will be held to constitute a ratification."). Illinois adopted this ratification standard to prevent unjust enrichment when the principal accepts and retains benefits from the alleged breach of fiduciary duty and to encourage the principal to accept responsibility for actions done on her behalf. Old Security, 740 F.2d at 1392.

Holly Hughes consented to the Investment Conversion when she signed a consent form on December 16, 1992, authorizing LaSalle to reinvest her trust assets held in the LaSalle National Common Trust Funds in the Rembrandt Funds.  (Compl. ¶ 76, Budoff Decl. Ex. Q) The consent form states that Holly Hughes

"understands that LaSalle Street Capital Management, a subsidiary of LaSalle National Trust, acts as Investment Advisor of the Funds for which it may receive a fee from the funds." (Budoff Decl. Ex. Q) She also ratified the Investment Conversion by failing to disaffirm or repudiate it, in that she waited over nine years to object to the placement of her trust funds in the Rembrandt Funds. See Williams v. Magnafici, 77 Ill. App. 3d 1035, 1039 (Ill. App. Ct. 1979) (delay of two years to bring an action after learning about the relevant transaction was evidence of ratification).

Holly Hughes argues that her consent and ratification of the Investment Conversion are invalid because she was not provided with the material facts both when she gave her consent and throughout the time before she filed this lawsuit. Yet, as explained below, Holly Hughes was made aware of the material facts pertaining to the Investment Conversion before the current action was commenced.

First, she argues that LaSalle did not disclose that she would pay a higher fee as a result of the Investment Conversion. Before Holly Hughes signed and returned the form authorizing the Investment Conversion, LaSalle provided her with a letter describing the Investment Conversion, a question-and-nswer sheet about the Investment Conversion, and a prospectus describing the Rembrandt Funds. (Compl. ¶ 76) The prospectus

lists the rates for the Advisory Fees that would be paid to LSCM. (Pl. Ex. 10 at p. 4) Thus, she was made aware that LaSalle may have been charging higher advisory fees after switching to the Rembrandt Funds she signed the authorization form and long before she filed the current action, yet she did nothing to repudiate the Investment Conversion.

Second, Holly Hughes argues she did not consent or ratify the Investment Conversion, because LaSalle did not disclose the tax consequences of the Investment Conversion. By 1994, Holly Hughes must have been aware of any alleged acceleration of taxable gains resulting from the Investment Conversion, because such tax consequences would have been accounted for on her 1993 tax return that had to be filed in 1994. Holly Hughes' assertion that she could not tell "whether these taxes were incurred as a result of the Investment Conversion, rather than as a result of stock sales within the Common Trust Funds" illustrates that the tax consequences of activities undertaken by LaSalle as trustee were not out of the ordinary and occurred before the Investment Conversion itself whenever investment vehicles were altered as they were during the Investment Conversion. (Pl. Reply at 54) Holly Hughes did nothing to disaffirm the Investment Conversion until 2002, long after she could have learned the material facts regarding alleged negative tax consequences.

Third, Holly Hughes argues she could not have consented to or ratified the Investment Conversion, because LaSalle's form letter to her regarding the Investment Conversion stated that the conversion was the result of customer demand for mutual funds as opposed to LaSalle's desires to increase its revenues. However, before signing the authorization form, Holly Hughes was informed that LSCM would be the investment advisor for the Rembrandt Funds, would be receiving fees in that capacity, and was a subsidiary of ABN-AMRO which was LaSalle's parent company. This is enough to inform her of LaSalle's financial interest in the operation of the Rembrandt Funds. Illinois law expressly permits a trustee to invest and reinvest the trust estate in a mutual fund, including those mutual funds "for which the trustee or an affiliate acts as advisor or manager" and receives "reasonable remuneration" for any services provided to the mutual funds. 760 Ill. Comp. Stat. 5/5.1 (1991). LaSalle did not conceal its interest in the Rembrandt Funds from Holly Hughes when she authorized the Investment Conversion or during the more than nine years that elapsed between the Investment Conversion and the filing of the current action.

Finally, Holly Hughes argues that she could not have consented to or ratified the Investment Conversion because LaSalle did not inform her that it was unsure whether the Rembrandt Funds would perform better then the common trust funds.

However, it was impossible for LaSalle to inform Holly Hughes, before the Investment Conversion, how successful the fledgling Rembrandt Funds would be. Bank executives do not have the gift of prophecy and are not required to provide trust beneficiaries with concrete predictions. Additionally, as the Investment Conversion did not materially change the underlying stocks and bonds held by the trust, Holly Hughes was able to assess the profitability of these investments before she consented to the Investment Conversion, based on her prior experience when those assets were a part of the common trust fund. Further, she was aware before she filed this action that the Rembrandt Funds were not a strongly performing investment, as such data was publicly available, she received a monthly statement of account from LaSalle, and her complaint alleges that all of the funds had been underperforming for at least the past five years. (Compl. ¶¶ 92, 94, 95, 97, 98, 100, 101, 103, 104, 106, 107) Despite her knowledge that the Rembrandt Funds were likely not performing better then the Common Trust Fund might have performed, she did nothing to disaffirm the Investment Conversion.

Holly Hughes was provided with the information material to her claims for equitable relief at the time she signed the authorization form for the Investment Conversion, and thus consented and cannot subsequently hold her trustee liable. Further, even if Holly Hughes' consent was not valid, she was

provided with additional information during the time between the Investment Conversion and her filing of the present action regarding tax consequences of the Investment Conversion, the fees charged by the Rembrandt Funds, and the performance of the Rembrandt Funds; yet she did nothing to disaffirm the Investment Conversion.  Because of her failure to act, she is deemed to have ratified the Investment Conversion and cannot now seek to hold the trustee liable.  Accordingly, Holly Hughes' claims seeking equitable relief are dismissed.

\*                          \*                          \*

For the reasons set forth above, defendants' motion to
dismiss is granted as to all of the claims made by Dion and Hal
Hughes because the statute of limitations has run.  Defendants'
motion to dismiss is granted as to all of the claims made by
Holly Hughes because the statute of limitations has run on her
fiduciary duty and tortious interference claims and because she
consented to and ratified the Defendants' allegedly tortious
conduct that is the basis of her unjust enrichment claim.
Accordingly, the complaint is dismissed.  The parties will attend
a conference on March 27, 2006 at 9:15 a.m. to discuss any
further proceedings in this matter.

SO ORDERED:

Dated: New York, New York                    Michael B. Mukasey
       March 13, 2006                         U.S. District Judge

30