```
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
----------------------------------X
HOLLY HUGHES, HAL HUGHES, and      :
DION HUGHES, on behalf of          :
themselves and all others          :
similarly situated,                :
                                   :
                                   :
            Plaintiffs,            :   02 Civ. 6384 (MBM)
                                   :   OPINION AND ORDER
     -against-                     :
                                   :
LASALLE BANK, N.A., ABN-AMRO       :
BANK N.V., ABN-AMRO HOLDING N.V.,  :
ABN-AMRO ASSET MANAGEMENT (USA),   :
INC., and LASALLE STREET CAPITAL   :
MANAGEMENT, LTD.,                  :
                                   :
            Defendants.            :
----------------------------------X
```

APPEARANCES:

RICHARD D. GREENFIELD, ESQ.
(Attorney for plaintiffs)
Greenfield & Goodman LLC
7426 Tour Drive
Easton, MD 21601
(410) 745-4149

DANIEL COBRINIK, ESQ.
(Attorney for plaintiffs)
2 Grand Central Tower
140 East 45th Street
25th Floor
New York, NY 10017
(212) 725-6888

KENNETH A. LAPATINE, Esq.
MARK H. BUDOFF, Esq.
(Attorneys for defendants)
Greenberg Traurig, LLP
200 Park Avenue
15th Floor
New York NY 10116
(212) 801-9200

MICHAEL B. MUKASEY, U.S.D.J.

This action arises out of trustee LaSalle's decision to reinvest the Hughes trust assets in mutual funds established by LaSalle's parent corporation and managed by its subsidiary to the alleged detriment of the Hughes trust beneficiaries. In an opinion and order dated March 13, 2006, ("the Opinion") I dismissed all of plaintiffs' claims, because the applicable statutes of limitation barred plaintiffs' breach of fiduciary duty and tortious interference with contract claims, as well as Dion and Hal Hughes' unjust enrichment claims. Further, Holly Hughes's unjust enrichment and injunctive relief claims were barred under Illinois law by her consent and ratification of the Investment Conversion. Plaintiffs now move pursuant to Local Rule 6.3 for reconsideration and also ask that they be allowed to serve yet another amended complaint. For the reasons below, the motion for reconsideration is denied and an amended complaint may not be filed.

I.

The facts relevant to this motion are stated fully in the Opinion, familiarity with which is assumed, and are restated or augmented here only to the extent necessary.

Dion, Hal, and Holly Hughes are the beneficiaries of a trust established by their grandfather (the "Hughes Trust"). (Compl. ¶ 16) LaSalle, a federally chartered bank that is a

1

wholly owed subsidiary of ABN-AMRO, is the trustee of the Hughes Trust. (COMpl. ¶¶ 13, 17) ABN-AMRO Asset Management and its precursor LaSalle Street Capital Management, Ltd. ("LSCM") are subsidiaries of LaSalle. (Compl. ¶ 14)

Before 1993, LaSalle invested its trust assets in individually managed common trust funds. (Compl. ¶ 23) The Common trust funds were managed and directed by LaSalle or LSCM, and, although they received fees for serving as trustee, LaSalle and its affiliates received no investment advisory fees from the trust accounts. (Compl. ¶¶ 24-25) In 1992, LaSalle's parent company, ABN-AMRO established a family of mutual funds called the Rembrandt Funds; LSCM was the investment advisor and SEI Corporation was the distributor and administrator for the Rembrandt Funds. (Compl. ¶¶ 29, 30)

In December 1992, LaSalle sent plaintiffs a form letter, a question-and-answer sheet, a prospectus describing the Rembrandt Funds, and a form to authorize conversion of the trust assets from individual managed accounts and/or common trust funds to the Rembrandt Funds (the "Investment Conversion"). (Compl. ¶ 76) These documents did not disclose explicitly that the Investment Conversion would increase value for the shareholders of ABN-AMRO. (Compl. ¶ 77) The question-and-answer sheet, a boilerplate form produced by SEI of the sort used by many banks, stated that LaSalle was switching to the Rembrandt Funds because

2

many customers had requested mutual fund investments. (Compl. ¶¶ 78, 80)

On January 4, 1993, LaSalle completed the Investment Conversion (Compl. ¶¶ 2, 36), which did not materially change the underlying stocks and bonds held by the fiduciary accounts or the management of those accounts; only the investment vehicle in which those securities were held was changed. (Compl. ¶ 49) LSCM managed the common trust funds prior to January 4, 1993, and it managed the Rembrandt Funds after January 4, 1993. (Compl. ¶ 50) The Investment Conversion benefited the defendants because the administrative expenses incurred by LaSalle could be passed on to the trusts as expenses. (Compl. ¶ 37) The Rembrandt Funds paid investment advisory fees to the defendants. (Compl. ¶ 4) Additionally, the Investment Conversion allegedly subjected the fiduciary accounts to premature and increased capital gains taxes. (Compl. ¶ 7)  After the Investment Conversion, LaSalle reduced its fiduciary fees by .3 percent and charged the Rembrandt Funds investment advisory fees for LSCM, administrative fees for SEI, and other operating expenses that averaged between one and two percent. (Compl. ¶ 39)

The Rembrandt Funds underperformed when compared to similar funds and other benchmarks. (Compl. ¶ 92) LaSalle never moved the fiduciary account assets into more productive investments. (Compl. ¶ 109)

On May 6, 1993, Hal Hughes sent a letter to Joanne Braun, the Trust Officer at LaSalle, requesting that LaSalle resign as a trustee for the Hughes Trust ("the Hughes Letter"). (Budoff Decl. Ex. O) He wrote that LaSalle "has done a very poor job of investing the corpus when compared to any of the common measures of performance;" he is "extremely concerned about the excessive amount of investment LaSalle . . . has made with the corpus of [his] trust in mutual funds managed by [LSCM];" he believes the performance of the Rembrandt Funds is "mediocre at best;" and he alleges that LaSalle's fees have "increased" and LaSalle is "able to double-dip fees through investment in funds sponsored by [LSCM]." (Id.) Further, Hal Hughes concluded, "[i]t appears that [LaSalle] has breached its fiduciary duty to me." (Id.)

LaSalle responded to Hughes on June 2, 1993 in a letter written by Joanne Braun ("the Braun Letter"). (Budoff Decl. Ex. O) Braun stated that "trust management fees were also reduced, and additional benefits are realized from [the Rembrandt Funds]. These include 1) daily quotations, 2) daily liquidity, and 3) additional fund choices" and that she would reallocate the fees charged to the various accounts within the Hughes Trust. (Id.) Braun declined Hal Hughes's request that LaSalle resign as trustee and did not otherwise address his breach of fiduciary duty claims. Both Holly and Dion Hughes were copied on the

4

Hughes Letter and the Braun Letter. (Id.)

Plaintiffs mentioned neither the Hughes Letter nor the Braun Letter in their complaint. The Court is aware of the letters only because defendants included them as exhibits to their papers filed in response to plaintiffs' summary judgment motion, which was not decided, and because plaintiffs now use the Braun Letter as evidence to support their motion for reconsideration.

Initially, plaintiffs sued as individuals in New York state court, Hughes v. LaSalle Bank, N.A., No. 105423/01; that action has been stayed by agreement of the parties pending determination of this action. (Compl. ¶ 8) Plaintiffs sued in federal court on August 12, 2002 and filed an amended complaint on January 6, 2004. Plaintiffs moved pursuant to Rule 56(c) and moved also for class certification, and defendants cross-moved pursuant to Rule 12(b)(6) to dismiss the claims against them. This court issued the Opinion in response to defendants' Rule 12(b)(6) motion, which concluded that the plaintiffs' breach of fiduciary duty and tortious interference claims were barred by the New York statute of limitations, Holly Hughes's unjust enrichment claim was barred under Illinois Law by her consent and ratification of the Investment Conversion, and Dion and Hal Hughes's unjust enrichment claims were barred by the Texas statute of limitations.

II.

To succeed on a motion for reconsideration pursuant to Local Rule 6.3, "a party must demonstrate that the Court overlooked controlling decisions or factual matters that were put before it on the underlying motion." Eisemann v. Greene, 204 F.3d 393, 395 n. 2 (2d Cir. 2000) (internal quotation marks omitted). Local Rule 6.3 is narrowly construed and strictly applied to avoid repetitive arguments that have already been considered. See, e.g., Dietrich v. Bauer, 198 F.R.D. 397, 399 (S.D.N.Y. 2001). The court must not allow a party to use the motion for reconsideration as a substitute for appealing the judgment. See Parrish v. Sollecito, 253 F. Supp. 2d 713, 715 (S.D.N.Y. 2003). Further, a party may not advance new facts, issues, or arguments that were not previously presented to the court. See Primavera Familienstifung v. Askin, 137 F. Supp. 2d 438, 442 (S.D.N.Y. 2001); Morse/Diesel, Inc. v. Fidelity and Deposit Co. of Md., 768 F. Supp. 115, 116 (S.D.N.Y. 1991).

Plaintiffs have advanced several arguments in favor of reconsideration here. Some are not properly part of a Local Rule 6.3 motion. Thus, the court need not weigh the arguments for reconsideration based on evidence outside the pleadings. In addition, plaintiffs make new arguments in support of its assorted positions, but these arguments also need not be considered because they were not previously advanced. Finally,

to the extent that plaintiffs have repackaged old arguments without identifying overlooked decisions or facts which support them, the court has considered these arguments fully in the Opinion and will not address them again.

III.

First, plaintiffs argue that I should reconsider my decision that the breach of fiduciary duty claim was time-barred, because the Proposed Second Amended Complaint, which alleges a separate breach of fiduciary duty claim based on LaSalle's decision not to divest the Hughes trust assets from the Rembrandt Funds, "should remove any doubt that some of plaintiffs' claims accrued after the Conversion." (Pl. Mem. at 2) I cannot consider allegations made in the Proposed Second Amended Complaint, because that pleading was not before this court in the underlying motion. Further, in the Opinion I did consider plaintiffs' argument that defendants breached their fiduciary duties by failing to divest the trust assets from the Rembrandt Funds, and found "[c]ontrary to Hughes' arguments, the continuation until today of LaSalle's alleged wrongdoing through its investment in the Rembrandt Funds does not toll the limitations period." Hughes, 419 F. Supp. at 613. In so finding, I determined that the plaintiffs' "failure to divest" claims were not separate and distinct from their claims arising out of the Investment

7

Conversion, largely because of the manner in which such claims were presented in the pleadings. A motion for reconsideration is not the proper forum for plaintiffs to raise new arguments or to rehash those previously addressed. Therefore, I will not reconsider the decision that the breach of fiduciary duty claims are time-barred.

Second, plaintiffs argue that, due to the contents of the Braun Letter, the Opinion's determination that plaintiffs were on inquiry notice of LaSalle's allegedly tortious actions is incorrect. (Pl. Mem. at 3) However, the Braun Letter was not before this court when I decided the defendants' motion to dismiss; it was not mentioned or referenced in any way in the pleadings. When materials outside the pleadings are offered on a motion to dismiss, "a district court should adhere strictly to the language of [Federal] Rule [of Civil Procedure] 12(b)" and not consider such evidence unless the court converts the motion to one for summary judgment and grants all parties the opportunity to present supporting material. Kopec v. Coughlin, 922 F.2d 152, 154 (2d Cir. 1991). A district court violates Rule 12(b) when it relies on affidavits or factual allegations contained in legal briefs or memoranda in ruling on the motion. Friedl v. City of New York, 210 F.3d 79. 83 (2d Cir. 2000). The Braun Letter is a fact being advanced for the first time and does not provide a proper basis for a motion for reconsideration.

Additionally, I cannot credit plaintiffs' ludicrous argument that I must find against defendants because the defendants did not introduce any trust reports into evidence. In particular, plaintiffs state that it is necessary for the Court to "presume that those quarterly reports failed to put plaintiffs on notice of increases in the aggregate fees and expenses charged to their accounts." As explained above, a motion to dismiss is determined solely on the pleadings; it would have been improper for defendants to submit the "evidence" the absence of which plaintiffs claim necessitates a presumption in their favor.

This court did not and will not consider matters outside the pleadings in deciding a motion to dismiss under Rule 12(b). Thus, any arguments advanced by the plaintiffs based on the Braun letter, any evidence they allege defendants failed to adduce, and any deposition testimony will not be considered. The plaintiffs chose not to include the Braun letter, or the Hughes Letter that prompted the responding Braun letter, in their complaint. Small wonder, but that decision was theirs.

Third, plaintiffs argue that I should reconsider my determination that plaintiffs were on notice of the alleged adverse tax consequences of the Investment Conversion. However, plaintiffs present no controlling law or allegations of fact that I overlooked in making my decision, and instead simply restate their point. The proper medium for such a restatement is an

9

appellate brief, not a motion for reconsideration.

Fourth, plaintiffs argue that I misapplied Illinois law when I determined that Holly Hughes ratified the Investment Conversion. Specifically, plaintiffs argue that I should have relied on Prueter v. Prueter, 105 Ill. App. 3d 1003 (Ill. Ct. App. 1981) and Kurtz v. Solomon, 275 Ill. App. 3d 643 (Ill. Ct. App. 1995), for the proposition that a trust beneficiary is not required to investigate potential claims if a trustee engages in acts of self-dealing. (Pl. Mem. at 14)

Neither Prueter nor Kurtz is relevant to the analysis in the Opinion, which explicitly determined that, based upon the pleadings, LaSalle did not fraudulently conceal any relevant facts, did make all full and necessary disclosures, and did not engage in self-dealing because the creation of the Rembrandt Funds and subsequent investment of trust assets in the Rembrandt Funds was permitted by Illinois law. Thus, as LaSalle was not alleged to have engaged in any self-dealing as that concept is known to Illinois law, the Prueter and Kurtz line of cases is wholly irrelevant to the analysis of whether Holly Hughes's claims are barred by the Illinois statute of limitations.

Additionally, plaintiffs argue that Holly Hughes's ratification of the Investment Conversion is invalid because defendants never disclosed to Holly Hughes her legal rights. However, plaintiffs do not argue that this court overlooked any

10

controlling law or relevant facts. Rather, they state "[o]n LaSalle's motion to dismiss, the Court should have presumed that plaintiffs were not advised of their legal rights and therefore had no duty of inquiry under Illinois law." (Pl. Mem. at 17) Any such argument falls within the determination made in the Opinion that LaSalle made full disclosure of the facts and that the pleadings do not demonstrate that the Investment Conversion diminished the legal rights of the Hughes trust beneficiaries. As explained above, such arguments are made properly before an appellate court and not on a motion for reconsideration.

Thus, as to each of these claims, rather than citing relevant facts contained in the pleadings or controlling decisions that the court overlooked, plaintiffs merely take issue with the court's analysis and interpretation of the relevant law. Their complaint is not that this court overlooked pertinent precedent, but that the Opinion did not accord sufficient weight to their arguments or did not properly apply the specific authority upon which their theories were based. Such a contention does not reflect new or compelling facts or law; it is merely plaintiff's own subjective assessment of the substance of the Court's ruling.

IV.

Plaintiffs's motion to file a second amended complaint

11

is also denied.  Although leave to amend should be freely granted when justice so requires, the district court retains the discretion to deny leave if there is a good reason for it, such as futility.  See Forman v. Davis, 371 U.S. 178, 182 (1962); Jin v. Metro. Life Ins. Co., 310 F.3d 84, 101 (2d Cir. 2002); United States ex rel. Mar. Admin. v. Cont'l Ill. Nat'l Bank & Trust Co., 889 F.2d 1248, 1254 (2d Cir. 1989).

Plaintiffs have submitted a Proposed Second Amended Complaint and, in light of both that proposed complaint and the Opinion, such repleading is futile.  The Proposed Second Amended Complaint alleges the same breach of fiduciary duty, tortious interference with contract, and unjust enrichment claims that this court determined were barred by the relevant statutes of limitations already.  The only new claim alleged in the Proposed Second Amended Complaint is that defendants breached their fiduciary duty because they failed to divest the Rembrandt Funds.[1]  Such a claim is time-barred under the relevant statute of limitations.  As discussed in the Opinion, the statute of limitations for a breach of fiduciary duty in New York is three years and that period applies to claims brought by all three plaintiffs.  See Hughes v. LaSalle Bank, N.A., 419 F. Supp. 2d 605, 611-14 (S.D.N.Y. 2006).  In the Amended Complaint,

---

[1] Plaintiffs withdrew their claim for violation of the Investment Advisers Act of 1940, 15 U.S.C. § 80b-6. (Pl. Reply Mem. of Law at 1)

12

plaintiffs state that "during the five year prior to commencement of the Hughes Action, this fund consistently performed worse than 94% of comparably invested funds;" "[d]uring the five years prior to the commencement of the Hughes Action, the Value Fund performed worse than 73% of comparably invested mutual funds;" "[d]uring the five years prior to the commencement of the Individual Action the Small Cap Fund performed worse than 67% of comparably invested funds;" and "[d]uring the five years prior to the commencement of the Hughes Action, the Growth Fund performed worse than 57% of comparably invested funds." (Compl. ¶¶ 95, 101, 104, 107) Based on such statements, the statute of limitations ran at the very latest two years before the complaint was filed, because plaintiffs, with reasonable diligence, could have discovered the facts that underlie their claim if they were not already aware of them. Further, although again not mentioned in the Proposed Second Amended Complaint, the Hughes letter itself shows that plaintiffs were aware of the Rembrandt Funds' alleged under-performance in 1993 yet failed to bring their claim until nine years later.

Additionally, plaintiffs have already been granted the opportunity to amend their complaint, and did so on December 24, 2003. Pleading is not an interactive game in which plaintiffs file a complaint and then volley it over a rhetorical net with the court until a viable complaint emerges. See In re Merrill

13

Lynch Ltd. P'ships Litig., 7 F. Supp. 2d 256, 276 (S.D.N.Y. 1997). Plaintiffs have the responsibility to plead their case adequately, without defendants' or the court's assistance. A court may deny a plaintiff leave to replead when that party "has been given ample prior opportunity to allege a claim." De Jesus v. Sears, Roebuck & Co., 87 F.3d 65, 72 (2d Cir.), cert. denied, 519 U.S. 1007 (1996). Plaintiffs have had ample opportunity to allege a claim and have, again, failed to propose a claim with any merit.

\*         \*         \*

For the reasons set forth above, plaintiffs' motion for reconsideration is denied and they are not permitted to file an amended complaint.

SO ORDERED:

Dated: New York, New York
July 14, 2006

Michael B. Mukasey
U.S. District Judge

14